# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| BRANDY JEAN KELLEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:10-cv-01041** |
| v. | ) | **Judge Nixon / Knowles** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 24. Plaintiff has filed a Reply. Docket No. 25.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on April 12,

2007,[1] alleging that she had been disabled since June 12, 2005, due to problems with her feet and back, as well as restless leg syndrome. *See, e.g.,* Docket No. 14, Attachment ("TR"), pp. 56, 92. Plaintiff's application was denied both initially (TR 54) and upon reconsideration (TR 66). Plaintiff subsequently requested (TR 52) and received (TR 71) a hearing. Plaintiff's hearing was conducted on April 8, 2010, by Administrative Law Judge ("ALJ") William B. Churchill. TR 22. Plaintiff appeared and testified. *Id.*

On May 4, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-18. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since June 12, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairments: status post removal of plantar fibroma bilaterally, degenerative disc disease, lumbrosacral radiculopathy, history of sleep apnea, history of restless leg syndrome (20 CFR 404.1520 (c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual

---

[1]Plaintiff's Brief and the ALJ's decision report Plaintiff's filing date as March 20, 2007. *See* Docket No. 17 and TR 10. The date stamped on the application summary itself is April 12, 2007. *See* TR 92-99. Whether Plaintiff filed on March 20 or April 12, however, is not material to the issues before the Court.

functional capacity to perform a wide range of sedentary work, as defined in 20 CFR 404.1567(a), lifting and carrying 10 pounds occasionally and no more than 10 pounds frequently. She can stand/walk for 2 [o]f 8 hours. She can sit 6 of 8 hours. She cannot climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch and crawl. Due to side effects of medication and physical pain, mentally the claimant is limited to performing detailed, but not complex, tasks.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on August 2, 1970 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education as is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that hte claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 12, 2005, through the date of this decision (20 CFR 404.1520(g)).

TR 12-18.

On May 18, 2010, Plaintiff timely filed a request for review of the hearing decision. TR

6. On September 22, 2010, the Appeals Council issued a letter declining to review the case (TR

1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner.  This

civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the

Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The

purpose of this review is to determine (1) whether substantial evidence exists in the record to

support the Commissioner's decision, and (2) whether any legal errors were committed in the

process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept

as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

*Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v.

N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[2]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) improperly rejecting the opinion of a treating source; 2) failing to properly consider whether Plaintiff met the requirements of Listing 1.04; 3) improperly discrediting Plaintiff's subjective complaints of pain; 4) improperly determining Plaintiff's residual functional capacity ("RFC"); and 5) improperly relying on the Medical Vocational Guidelines (the Grid) without the assistance of a vocational expert. Docket No. 17. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Weight Accorded to Treating Physician's Opinion**

Plaintiff maintains that the opinion of William Schooley, M.D., should be given controlling weight, or in the alternative, great deference, because Dr. Schooley treated Plaintiff from July 2008 through "at least March 2010." Docket No. 17. Plaintiff contends that, as Plaintiff's treating physician, Dr. Schooley was in the best position to offer an informed medical opinion regarding her impairments. *Id.* Plaintiff argues that the Medical Source Statement completed by Dr. Schooley on her behalf should be accorded controlling weight because Dr. Schooley's opinion expressed therein was based in part on the clinical exams and test results of Plaintiff's surgeons and specialists, and because Dr. Schooley's opinion was supported by, and consistent with, the record as a whole. *Id.* Plaintiff contends that none of the state agency physicians who rendered opinions in this case saw the medical records detailing Plaintiff's failed back surgery, and, therefore, that it was reversible error for the ALJ to rely upon the opinions of physicians who had no opportunity to review all of the pertinent evidence, and for the ALJ to reject Dr. Schooley's assessment without a contrary opinion from any medical source with

8

access to all the relevant evidence. *Id.* Plaintiff additionally maintains that the ALJ failed to articulate an adequate rationale for according little weight to Dr. Schooley's opinion, and Plaintiff contends that the ALJ's characterization of Dr. Schooley's findings is factually inaccurate. *Id.*

Defendant responds that the ALJ properly evaluated Dr. Schooley's opinion, properly accorded it little weight, and properly discussed the evidence of record. Docket No. 24. Defendant additionally argues that the record demonstrates that Plaintiff's foot problems were abated prior to her beginning treatment with Dr. Schooley, and that his opinions regarding her pain level were inconsistent with Plaintiff's own testimony and with reports from other examining physicians. *Id.* Defendant maintains that the ALJ articulated sufficiently specific reasons for his rationale, all of which were factually accurate, and all of which were supported by substantial evidence from the record. *Id.*

In her Reply, Plaintiff reiterated her arguments above regarding the ALJ's rejection of Dr. Schooley's opinion. Docket No. 25.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Schooley treated Plaintiff from July 2008 through "at least March 2010," and Plaintiff is correct that the length of this treatment relationship may justify the ALJ's giving

greater weight to his opinion than to other opinions. The length of treatment relationship is just one factor of many delineated by the Regulations. *See* 20 C.F.R. § 416.927(d), *supra*. As the Regulations provide, the opinion of a treating physician can be accorded controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*." *Id.*

As will be explained in greater detail below, while Dr. Schooley is Plaintiff's treating physician, his opinion contradicts other substantial evidence in the record, and therefore the ALJ is not bound to accord it controlling weight. The ALJ explained:

> The undersigned also considered the medical source statement for Social Security Claim form completed by William Schooley, M.D. Dr. Schooley opined that the claimant would be limited to lifting no more than 5 pounds, standing 4 hours of an 8 hour workday, sitting 4 hours of an 8 hour work day [*sic*], and only occasionally or frequently performing postural maneuvers, fine or gross manipulation with her hands and work around hazards. He additionally opined that the claimant needed to elevate her legs occasionally during an 8-hour workday, required an assistive device for ambulation, and that her pain would constantly interfere with her attention and concentration. However, the undersigned gives this opinion little weight in determining the claimant's residual functional capacity because it is inconsistent with the objective, longitudinal evidence of record that shows that the claimant was not always compliant with her pain medication despite repeatedly stating that it helped her pain symptomology. Furthermore, the fact that Dr. Schooley only indicates lumbar spondylosis as the claimant's diagnosis appears to indicate that the claimant no longer has any limitations related to her foot pain. Moreover, the claimant admitted at the hearing that she did not always need an assistive device to ambulate, and that she no longer used or wore orthotic shoes.

TR 16-17, *see* TR 22-51, 363-66.

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the

record.  *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2).  Instead, when there is

contradictory evidence, the treating physician's opinion is weighed against the contradictory

evidence under the criteria listed above.  *Id.*  As such, the Regulations do not mandate that the

ALJ accord Dr. Schooley's opinion controlling weight.

Contrary to Plaintiff's assertions, the ALJ's explanation above indicates specific

discrepancies between Dr. Schooley's opinion and the evidence of record, thus satisfying the

requirement that the ALJ articulate his reasons for discrediting a medical opinion.  These

discrepancies support the ALJ's determination that Dr. Schooley's opinion is entitled to little

weight.  Also contrary to Plaintiff's assertions, the evidence of record demonstrates that the ALJ

accurately characterized Dr. Schooley's findings.  *See, e.g.*, TR 16-17, 363-66.

Moreover, Plaintiff's contention that the ALJ's reasoning above is factually inaccurate is

unfounded.  The ALJ reported that Plaintiff "underwent a resection of a small spur with plantar

fascia release surgery on her left foot in October 2005, and subsequently underwent a spur

resection and plantar release surgery on her right foot as well."  TR 14, *citing* TR 170-78, 184-

221.  The ALJ also reported that Plaintiff  "underwent a plantar fasciectomy of the right foot in

November of 2006."  TR 15, *citing* TR 222-91.  The ALJ continued, "by September of 2008 she

received a diagnosis of lumbar spondylosis . . . Subsequently, the claimant underwent a

laminectory . . . ."  TR 15, *citing* TR 318-62.  The ALJ's decision is factually consistent with the

record.

The ALJ considered the Dr. Schooley's opinion in accordance with the Regulations,

accurately characterized this opinion, and articulate a detailed rationale for discrediting Dr.

Schooley's findings.  Accordingly, Plaintiff's argument fails.

## 2. Meeting or Equaling a Listing

Plaintiff argues that she suffers from an impairment or a combination of impairments that meets or medically equals Listing 1.04A, and that the ALJ did not properly consider the Listings after her back surgery. Docket No. 17. Specifically, Plaintiff argues that her osteoarthritis of the lumbar spine with nerve root compromise (evidenced by radicular distribution, limitation of range of motion of the lumbar spine, motor loss as shown by muscle weakness, sensory loss, and positive straight leg raising) meets the requirements of Listing 1.04A. She further argues that she met the Listing 1.04 requirements for at least 12 months after the claim reached the hearing level. *Id.* Plaintiff contends that the ALJ failed to obtain testimony from a medical advisor, and maintains that neither the ALJ, nor Plaintiff's non-lawyer representative at the hearing, adequately addressed this Listing at the hearing, such that the ALJ's unfavorable finding at step three of the sequential evaluation process without consideration of whether the requisites of Listing 1.04 were satisfied constitutes reversible error. *Id.* Plaintiff additionally contends that Listing 1.04 erroneously was not addressed at the reconsideration level. *Id.*

Defendant responds that Plaintiff did not meet her burden of proof that she satisfies the Listing 1.04 requirements. Docket No. 24. Specifically, Defendant contends that the medical record does not contain sufficient findings to meet the specified criteria. *Id.* Defendant concedes that the record demonstrates the presence of a spinal disorder, but argues that the evidence does not support her claim that she meets the remaining Listing requirements. *Id.* In particular, Defendant argues that the record does not contain evidence of motor loss, and argues that Plaintiff displayed negative straight leg raising. *Id.* Defendant concedes that Plaintiff later displayed positive straight leg raising results, but argues that Plaintiff was able to ambulate

without an assistive device.  *Id.*  Defendant maintains that, contrary to Plaintiff's assertions, the

ALJ did, in fact, consider Plaintiff's impairments under Listing 1.00.[3]  *Id., citing* TR 12.

Plaintiff clarifies and reiterates her contentions in her Reply.  Docket No. 25.

An ALJ must evaluate the combined effect of a plaintiff's impairments.  42 U.S.C. §

423(d)(2)(B).  Plaintiff, however, fails to show that the ALJ in the case at bar did not do so.

Instead, Plaintiff simply maintains that the ALJ did not adequately address the applicability of

Listing 1.04.  Docket No. 17.  With regard to Listings 1.00, "Musculoskeletal System," and 1.04,

"Disorders of the Spine," specifically, the Code of Federal Regulations states in pertinent part as

follows:

> [1.00B2]b.  *What We Mean by Inability to Ambulate Effectively*
>
> (1) *Definition*.  Inability to ambulate effectively means an extreme
> limitation of the ability to walk; *i.e*., an impairment(s) that
> interferes very seriously with the individual's ability to
> independently initiate, sustain, or complete activities.  Ineffective
> ambulation is defined generally as having insufficient lower
> extremity functioning (see 1.00J) to permit independent
> ambulation without the use of a hand-held assistive device(s) that
> limits the functioning of both upper extremities.  (Listing 1.05C is
> an exception to this general definition because the individual has
> the use of only one upper extremity due to amputation of a hand.)
>
> (2)  *To ambulate effectively*, individuals must be capable of
> sustaining a reasonable walking pace over a sufficient distance to
> be able to carry out activities of daily living.  They must have the
> ability to travel without companion assistance to and from a place
> of employment or school.  Therefore, examples of ineffective
> ambulation include, but are not limited to, the inability to walk
> without the use of a walker, two crutches or two canes, the

---

[3] As explained below, Listing 1.00 refers to the overall Listing for impairments regarding
the "Musculoskeletal System" as a whole, while Listing 1.04 pertains to the "Disorders of the
Spine" specifically.  In order to meet or equal the requirements for Listing 1.04, Plaintiff must
first meet or equal the threshold requirements of Listing 1.00.

inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

. . .

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

. . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2b and 1.04A.

Plaintiff is correct that after her back surgery she displayed positive straight leg raising, right sided sciatica, lumbago, and post lumbar laminectomy syndrome. TR 16, 318-62. This is, however, insufficient to meet the requirements of Listing 1.04 detailed above. Although Plaintiff claims that the record also contains evidence of radicular distribution, limitation of range of motion of the lumbar spine, motor loss as shown by muscle weakness, and sensory loss sufficient to meet the Listing, she does not cite where in the record any of this evidence can be found. Docket No. 17. In fact, as the ALJ explained:

There is no objective medical evidence that the claimant experienced the degree of pain and/or functional limitation that is required to meet or equal the criteria set forth under Medical Listing 1.00, musculoskeletal systems, or any other Medical

15

Listing.

TR 12.

The above indicates that the ALJ specifically considered whether Plaintiff met Listing 1.00, which includes as a subcategory, Listing 1.04. Because the record did not contain evidence that Plaintiff met any of the requirements under Listing 1.00, Plaintiff cannot not meet the requirements of Listing 1.04, as Listing 1.00 provides the threshold requirements necessary to meet any of the "Musculoskeletal System" disorders.

Additionally, Plaintiff fails to advance any evidence that her lumbar spondylosis resulted in the requisite inability to ambulate effectively. Most notably, as referenced above, Plaintiff testified at her hearing that she did not regularly need an assistive device to ambulate effectively:

> Q.    Are you using a cane or any assistive device?
>
> A.    I do sometimes, not, not every single day, no sir.
>
> Q.    You don't have one with you today?
>
> A.    No, sir. No, sir.
>
> Q.    Was a cane prescribed?
>
> A.    No. Although, in the records it states, you know, that I'm supposed to have one, but he never prescribed me one.

TR 36.

Treatment notes following her back surgery further support the determination that Plaintiff could ambulate effectively, and was therefore precluded from meeting the Listing requirements:

> Subsequently, although the claimant reported worsening back pain in February of 2009, and examination notes from April 2009 reveal that she displayed positive straight leg raising and was diagnosed

with right sided sciatica, lumbago, post lumbar laminectomy syndrome, she continued to be noted as able to ambulate without an assistive device with a non-anatalgic gait and normal stance/swing phases. However, examination notes from May of 2009 reported that the claimant experienced mild recess stenosis of the lumbar spine at L5-S1 on the right side only, and an MRI performed in July of 2009 showed cervical spondylosis with mild to moderate foraminal narrowing at C3-4, C4-5 and C5-6 on the right, which led to diagnoses of degenerative disc disease and lumbosacral radiculopathy and a series of three epidural steroid injections. Although these facts support a finding that the claimant would experience some exertional limitations, these facts do not support a conclusion [that] the claimant had impairments that would have precluded her from working on her alleged onset date.

TR 16, *citing* TR 318-62.

The ALJ, after evaluating all of the medical and testimonial evidence, determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing, because, *inter alia*, Plaintiff did not suffer from the requisite degree of pain or functional limitation. TR 12. The rationale in the ALJ's decision specifically addresses the medical evidence, as well as Plaintiff's testimony and subjective claims regarding her combined impairments, her pain, and her ability to ambulate effectively, clearly indicating that these impairments were considered. TR 16-17.

There is no evidence to support Plaintiff's claims that the ALJ did not consider whether Plaintiff satisfied the criteria of Listing 1.04. To the contrary, it is clear from the ALJ's articulated rationale that he considered whether Plaintiff met the criteria of Listing 1.00, which are the prerequisites to satisfying the criteria of Listing 1.04. Because the ALJ determined that Plaintiff did not meet the criteria for Listing 1.00, he did not need to consider whether Plaintiff met the criteria for Listing 1.04, since Plaintiff could not meet the criteria for Listing 1.04 without first meeting the criteria for Listing 1.00. Further, Plaintiff has not introduced any

evidence to support the contention that she met all the requisite Listing requirements for a consecutive 12 month period after the hearing date.

There is substantial evidence in the record to support the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing; the ALJ's decision, therefore, must stand.

## 3. Subjective Complaints of Pain

Plaintiff contends that the ALJ did not appropriately address her complaints of pain because he found that her subjective complaints were not fully credible. Docket No. 17. Specifically, Plaintiff argues that the ALJ found that she established having medically determinable impairments which could reasonably be expected to produce the symptoms she described, but discredited her credibility without citing any malingering, exaggeration, or other evidence that she misrepresented her claims. *Id.*

Defendant responds that the ALJ's assessment of Plaintiff's credibility was proper. Docket No. 24. Specifically, Defendant maintains that, in finding that the evidence of record did not support the degree of limitation alleged, the ALJ explicitly noted numerous examples of Plaintiff's behavior that were inconsistent with her subjective complaints, including, *inter alia*, Plaintiff's failure to take her anti-inflammatory medication while continuing to walk barefooted, the successfulness of her medication regimen when she was compliant, her failure to seek treatment for any foot-related issues after 2007, and her ability to return to housework. *Id.* Defendant additionally argues that the absence of malingering is not, in and of itself, grounds for relief, as the ALJ is to consider factors such as the claimant's daily activities; location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and

aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication the

claimant takes or has taken to alleviate pain or other symptoms; treatment, other than

medication, the claimant receives or has received for relief of pain or other symptoms; and any

other factors concerning the claimant's functional limitations and restrictions due to pain or other

symptoms. *Id.* Defendant also notes that the ALJ is not legally required to accept or reject the

entirety of the Plaintiff's subjective testimony, but rather, can find some allegations are credible,

and others not. *Id.*

Plaintiff's Reply reasserts her arguments on this point. Docket No. 25.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations

of disabling pain:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing a claimant's subjective complaints of pain and other symptoms, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against a claimant's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir.

1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

In the case at bar, the ALJ found that Plaintiff's allegations and testimony regarding the persistence, severity, and intensity of her pain were not fully credible.  TR 16.  Specifically, the ALJ explained:

> [T]he claimant continued to complain of pain and discomfort, and after being diagnosed with plantar fibroma on the left, the claimant underwent a plantar fascial/steindler stripping of the left foot in March of 2006.  Subsequently, she was noted as able to bear weight on the left foot by June of 2006, and accordingly underwent a plantar fasciectomy of the right foot in November of 2006 (Exhibit 7F, 8F).  Follow up examination notes reveal that the claimant originally used a crutch, but only had "a little bit" of swelling, and her reported pain was noted as normal.  However, the claimant reported that she ran out of Naprosyn medication and occasionally walked around barefoot despite, being told repeatedly that she must take anti-inflammatory medication on a regular basis and keep her special shoes on.  Additionally, Physician's notes from May of 2007 even indicate that [treating physician Dr. Francis Hawthorn] "advised her that she is never going to get better unless she plays ball" (Exhibit 11F).  These notes showing medication and treatment non-compliance, combined with the fact that claimant appears to have stopped seeking treatment for her feet altogether in 2007, suggests that the symptoms were not as serious as alleged or had resolved by mid-2007.

> Although it appears that the claimant discontinued seeing any doctor or specialist regarding her foot pain in mid-2007, she did undergo a consultative examination in July of 2007, and reported experiencing foot problems since January of 2005, as well as lower back pain with occasional radiation down her legs and a history of sleep apnea and restless leg syndrome. . . . [S]he was additionally noted with negative straight leg raising bilaterally, a full range of motion in her shoulders, elbows, wrists, hips, knees, ankles, negative Romberg testing, 5/5 grip strength, intact deep tendon reflexes and the ability to get on and off the examination table without assistance. . . . (Exhort [*sic*] 9F).

. . . Although a CT scan performed in December of 2008 showed mild stenosis at L4-5 secondary to joint arthropathy, the claimant was otherwise noted as doing well status post lumbar fusion, and was referred for physical therapy, which does not indicate that the claimant would have been prevented from working on a regular and continuing basis (Exhibit 13F, 14F).

Subsequently, although the claimant reported worsening back pain in February of 2009, and examination notes from April of 2009 reveal that she displayed positive straight leg raising and was diagnosed with right sided sciatica, lumbago, post lumbar laminectomy syndrome, she continued to be noted as able to ambulate without an assistive device with a non-antalgic gait and normal stance/swing phases. However, examination notes from May of 2009 reported that the claimant experienced mild recess stenosis of the lumbar spine at L5-S1 on the right side only, and an MRI performed in July of 2009 showed cervical spondylosis with mild to moderate foraminal narrowing at C3-4, C4-5 and C5-6 on the right, which led to diagnoses of degenerative disc disease and lumbosacral radiculopathy and a series of three epidural steroid injections (Exhibit 13, F, 14F). Although these facts support a finding that the claimant would experience some exertional limitations, these facts do not support a conclusion the claimant had impairments that would have precluded her from working on her alleged onset date.

Thereafter, treatment notes indicate that the claimant continued to complain of lower back, neck, shoulder and knee pain at a level 6-8 on a 10 point scale through early 2010. However, she additionally reported her pain medication was working well in May and June of 2009, helped in October of 2009, and was again working quite well in December of 2009 without side effects. Despite repeatedly reporting that her medication worked well, and indicating on occasion in 2009 that she was able to perform housework, she was again noted as not taking her prescribed medication in January of 2010, which again suggests that the alleged symptoms were not as severe as alleged in connection with this application (Exhibit 14F). After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The fact that

the claimant stopped seeking treatment for her alleged foot impairments, combined with the fact that the claimant was noted as non-compliant with treatment and medication on several occasions, as well as the fact that she repeatedly reported that her medication helped, leads the undersigned to afford the claimant' allegations and testimony less credibility.

TR 15-16, *citing* TR 222-91, 305-09, 292-96, 318-62, 342-62.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective complaints, indicating that these factors were considered. TR 15-16. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

After assessing all the objective medical evidence, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expect to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." TR 16. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, Plaintiff's claim fails.

**4. Residual Functional Capacity**

Plaintiff maintains that the ALJ's RFC determination is not supported by substantial

evidence.  Docket No. 17.  Specifically, Plaintiff argues that, in rejecting the opinions of Dr.

Schooley and the state agency non-examining physicians, the ALJ "impermissibly struck a

compromise" between the opinions of Dr. Schooley and the non-examiners, yielding an RFC that

was less restrictive than the restrictions opined by either Dr. Johnson or Dr. Schooley.  *Id.*

Plaintiff notes that, while the ALJ's RFC "resembles the findings of Dr. Johnson," the ALJ "also

declined to accept all of the restrictions assessed by Dr. Johnson."  *Id.*

Defendant responds that the ALJ properly determined Plaintiff's RFC.  Docket No. 24.

Specifically, Defendant notes that the ALJ properly discounted the opinions of Dr. Schooley and

state agency physicians Drs. Joe G. Allison and Frank R. Pennington, and properly explained his

reasons for so doing.  *Id.*  Defendant argues that the ALJ actually imposed greater restrictions

than did Drs. Schooley, Allison, and Pennington, articulating that he did so because the

combined effects of Plaintiff's pain and medication side-effects warranted greater restrictions.

*Id.*  Defendant also argues that the ALJ's RFC determination mirrors Dr. Johnson's assessment.

*Id.*

In her Reply, Plaintiff again asserts that the ALJ improperly determined her RFC.

Docket No. 25.

"Residual Functional Capacity" is defined as the "maximum degree to which the

individual retains the capacity for sustained performance of the physical-mental requirements of

jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).  With regard to the evaluation of physical

abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and
> extent of your physical limitations and then determine your residual
> functional capacity for work activity on a regular and continuing
> basis.  A limited ability to perform certain physical demands of work

activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

Plaintiff's arguments concerning the ALJ's evaluation of Dr. Schooley's opinion have been discussed above, and will not be reiterated here. As analyzed above, the ALJ properly discounted Dr. Schooley's opinion. Because the ALJ properly discounted Dr. Schooley's opinion, Dr. Schooley's opinion cannot serve as the basis for the ALJ's ultimate RFC determination, and Plaintiff's argument on this point fails.

Plaintiff is correct that the ALJ's RFC determination does not mirror the restrictions recommended by State agency physicians Allison and Pennington. TR 12, 298, 311. Both Drs. Allison and Pennington assessed that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and could stand and/or work for 6 hours in an 8-hour workday (TR 298, 311), while the ALJ found that Plaintiff could lift 10 pounds occasionally and no more than 10 pounds frequently, and could stand/walk 2 hours in an 8 hour workday. TR 12. Notably, the ALJ's determination is more restrictive than the assessments for which Plaintiff now advocates. Contrary to Plaintiff's assertion that the ALJ's more restrictive assessment was derived by striking an impermissible compromise, the ALJ explained his decision as follows:

In accordance with [SSR] 96-6p, the undersigned has considered the administrative findings of fact made by the State agency medical physicians [Drs. Allison and Pennington] (Exhibit 10F, 12F). The undersigned finds that the claimant is more appropriately limited to the sedentary range of work, rather than the medium range found by the State agency examiners, given the claimant's combination of impairments. The undersigned, giving

the claimant the extreme benefit of all doubt regarding the combination of medicinal side effects and physical pain on her nonexertional functional abilities, has further limited the claimant to a reduced range of simple, sedentary work, as discussed above. While the evidence does not entirely support the claimant's extensive complaints, some level of pain could reasonably be expected as the result of her impairments. Accordingly, the State agency opinions are granted little evidentiary weight in determining the claimant's functional abilities.

TR 17, *citing* 297-304, 310-17.

As can be seen, the ALJ duly considered the assessments of Drs. Allison and Pennington, along with the remainder of the medical and testimonial evidence of record. After evaluating the entirety of the evidence, the ALJ concluded that the limitations imposed by Drs. Allison and Pennington should be further reduced to account for Plaintiff's pain, medication side-effects, and overall combination of impairments. This determination was proper. Plaintiff's argument on this point fails.

Moreover, Plaintiff's assertion that the ALJ's RFC finding is less restrictive than Dr. Johnson's recommendation is inaccurate. Dr. Johnson concluded that:

[Plaintiff] should not stand more than 2 to 3 hours for [an] 8-hour shift on her feet, alternative standing and sitting as needed. She may lift 10 pounds occasionally. She has no sitting restrictions at this time. She continues to see a doctor in regards to his [*sic*] various medical conditions, and work activities should not exceed any restrictions placed on her by her treating physician.

TR 296, *see also* TR 15.

As the Defendant correctly notes, the ALJ largely adopted an RFC that mirrors Dr. Johnson's assessment. TR 12. The ALJ properly analyzed Dr. Johnson's findings in his opinion, stating:

Upon examination [by Dr. Johnson], although she was noted with as [*sic*] overweight at approximately 5 feet 8 inches tall and 298 pounds with a hobbled gait and some back pain, she was additionally noted with negative straight leg raising bilaterally, a full range of motion in her shoulders, elbows, wrists, hips, knees, ankles, negative Romberg testing, 5/5 grip strength, intact deep tendon reflexes and the ability to get on and off the examination table without assistance. After diagnosing the claimant, who was noted as status post removal of plantar fibroma bilaterally, with low back syndrome, restless leg syndrome, sleep apnea and obesity, the examiner opined that the claimant did not have any restriction sitting, could stand 2-3 hours out of an 8 hour work day [*sic*], and could lift 10 pounds occasionally, which supports the residual functional capacity given above (Exhort [*sic*] 9F).

TR 15, *citing* TR 292-96.

Ultimately, the ALJ made the following RFC assessment:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of sedentary work, as defined in 20 CFR 404.1567(a), lifting and carrying 10 pounds occasionally and no more than 10 pounds frequently. She can stand/walk for 2 [o]f 8 hours. She can sit 6 of 8 hours. She cannot climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch and crawl. Due to side effects of medication and physical pain, mentally the claimant is limited to performing detailed, but not complex, tasks.

TR 12-13.

As the above RFC determination indicates, the ALJ adopted the same restrictions as Dr. Johnson regarding Plaintiff's ability to lift weight and stand/walk during the work day. Although Plaintiff contends that the ALJ's determination is less restrictive than Dr. Johnson's (Docket No. 17), the above shows that it is, in fact, more restrictive. The ALJ imposed a sitting restriction, while Dr. Johnson found there was no sitting limitation. TR 12-13, 296. Moreover,

the assessments of Drs. Allison, Pennington, and Johnson are in agreement that Plaintiff can perform at least the level of work that the ALJ's RFC found.

After evaluating all of the objective medical and testimonial evidence of record, as well as Plaintiff's subjective complaints and reported level of activity, the ALJ determined that Plaintiff retained the RFC to perform a wide range of sedentary work. TR 12. The ALJ considered the evidence of record, reached a reasoned decision, and clearly articulated the basis for his RFC finding. The ALJ properly reached his RFC determination; the ALJ's decision must stand.

## 5. Reliance on the Grid Rules

Plaintiff argues that the ALJ's reliance on the Grid at step five of the sequential evaluation process is erroneous because the ALJ failed to recognize that he adopted nonexertional limitations that compromise Plaintiff's ability to perform sedentary work and because he did not consult a vocational expert to determine the existence of available positions considering Plaintiff's determined exertional and nonexertional limitations. Docket No. 17.

Defendant responds that the ALJ's reliance on the Grid was proper and that the Commissioner met his burden of proof at step five of the sequential evaluation process. *Id.* Specifically, Defendant argues that an ALJ is not required to solicit testimony from a vocational expert when the nonexertional limitations do not erode the opined work base. *Id.* Defendant contends that the solicitation of vocational expert testimony was not required in the case at bar because there was no erosion of Plaintiff's sedentary occupational base because of her alleged nonexertional limitations. *Id.*

As explained above, the Commissioner has the burden at step five of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if the claimant is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

Plaintiff contends that her ability to do no more than occasional balancing, stooping kneeling, crouching, and crawling; the side effects of her medication; her physical pain; and her mental capacity for performing detailed, but not complex tasks, constitute nonexertional impairments that preclude her from performing sedentary work, such that the ALJ's reliance on the Grid rules was improper. Docket No. 17. The presence of pain, other symptoms, and/or mental impairments, however, does not preclude reliance upon the Grid rules, unless it results in functional limitations that significantly limit a claimant's ability to work at a particular exertional level, such that the occupational base would be eroded. *See, e.g., Moon*, 923 F.2d at 1182; *Buress v. Secretary*, 835 F.2d 139, 142-43 (6th Cir. 1987); *Cole v. Secretary*, 820 F.2d 794, 796 (6th Cir. 1986). As explained above, the ALJ properly evaluated Plaintiff's subjective complaints. Plaintiff's assertions that her pain and other symptoms prevent her from working are, therefore, unpersuasive. Additionally, the ALJ's discussion of Plaintiff's credibility, detailed above, shows that the ALJ did recognize Plaintiff's allegations regarding her pain, side effects, and other symptoms, which may constitute nonexertional limitations. Moreover, the

ALJ recognized that he was imposing other nonexertional limitations, and detailed these

limitations in his opinion:

> She cannot climb ladders, ropes or scaffolds. She can occasionally
> climb ramps and stairs. She can occasionally balance, stoop,
> kneel, crouch and crawl. Due to side effects of medication and
> physical pain, mentally the claimant is limited to performing
> detailed, but not complex, tasks.

TR 12-13.

As Defendant correctly states, an ALJ may rely on the Grid as a framework for decision-

making, but must also rely on another sources to carry his burden when the claimant has a

nonexertional impairment(s) that restricts the performance of a full range of work. *See Burton v.*

*Secretary*, 893 F.2d 821, 822 (6th Cir. 1990). In the case at bar, however, Plaintiff is not

restricted from performing a full range of sedentary work. Regarding the limitations described

above, the ALJ explained that "the additional limitations have little or no effect on the

occupational base of unskilled sedentary work." TR 18.

SSR 96-9p explains the demands of a full range of sedentary work as follows:

> The ability to perform the full range of sedentary work requires the
> ability to lift no more than 10 pounds at a time and occasionally to
> lift or carry articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one that involves sitting, a
> certain amount of walking and standing is often necessary in
> carrying out job duties. Jobs are sedentary if walking and standing
> are required occasionally and other sedentary criteria are met.
> "Occasionally" means occurring from very little up to one- third of
> the time, and would generally total no more than about 2 hours of
> an 8-hour workday. Sitting would generally total about 6 hours of
> an 8-hour workday. Unskilled sedentary work also involves other
> activities, classified as "nonexertional," such as capacities for
> seeing, manipulation, and understanding, remembering, and
> carrying out simple instructions.

SSR 96-9p.

As can been seen, the nonexertional limitations that Plaintiff alleges do not compromise her ability to perform a full range of sedentary work as described in SSR 96-9p. The ALJ's properly determined RFC does not erode Plaintiff's occupational base for a full range of sedentary work; and Plaintiff is not precluded from performing a full range of sedentary work. Accordingly, the ALJ was not required to solicit the testimony of a vocational expert in rendering his decision, and his reliance on the Grid was proper. Accordingly, Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge